This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**IN THE MATTER OF THE TWO PETITIONS
FOR A HEARING ON THE MERITS REGARDING
AIR QUALITY PERMIT NO. 2037-M1 ISSUED TO
SMITH'S FOOD & DRUG CENTERS, INC.,**

**GEORGIANNA E. PENA-KUES, ANDY
CARRASCO, JAMES A. NELSON and SUMMIT
PARK NEIGHBORHOOD ASSOCIATION,**

Petitioners-Appellees,

v.                                                              **No. 32,790**

**SMITH'S FOOD & DRUG CENTERS, INC.
and THE CITY OF ALBUQUERQUE,**

Respondents-Appellants.

**APPEAL FROM THE ALBUQUERQUE/BERNALILLO COUNTY AIR
QUALITY CONTROL BOARD
Felicia L. Orth, Hearing Officer**

Georgianna E. Pena-Kues
Albuquerque, NM

James A. Nelson
Albuquerque, NM

Judy Jennings
Albuquerque, NM

Pro Se Appellees

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Lorraine Hollingsworth
Albuquerque, NM

for Appellee Andy Carrasco

Sutin, Thayer & Browne, P.C.
Frank C. Salazar
Timothy J. Atler
Albuquerque, NM

for Appellant Smith's Food & Drug Centers, Inc.

City of Albuquerque
David Tourek, City Attorney
Carol M. Parker, Assistant City Attorney
Donna J. Griffin, Assistant City Attorney
Albuquerque, NM

for Appellant City of Albuquerque

## MEMORANDUM OPINION

**FRY, Judge.**

{1}    In this appeal, the City of Albuquerque and Smith's Food and Drug Centers, Inc. (collectively, Respondents) appeal the decision of the Albuquerque-Bernalillo County Air Quality Control Board denying Smith's application to increase the amount of fuel it is permitted to annually dispense at its gas station located at the intersection of Carlisle and Constitution in Albuquerque (the Station). Respondents raise a number of issues regarding the Board's decision. Because we agree with Respondents

that the Board made no findings of fact that support its decision to deny the permit, we conclude that the Board's decision was arbitrary and capricious. Accordingly, we reverse.

**BACKGROUND**

{2}    Smith's first sought and received an authority-to-construct permit from the Albuquerque Air Quality Division (Division) in 2009 to dispense fuel at the Station. The permit limited the Station to an annual throughput (the amount of fuel dispensed) of 3,369,925 gallons. This limit was requested by Smith's as the maximum amount of fuel it estimated it would dispense in a given year. No challenge was lodged against the initial permit allowing Smith's to open the Station. The Station opened for business in June 2010 after receiving its permit.

{3}    By 2011, the Station was exceeding its permitted throughput limit. The Division issued Smith's two "Notices of Violation" and imposed monetary penalties. The Division also ordered Smith's to take corrective action, which included submission of a permit modification application. Smith's subsequently applied for a modification that would allow it to increase its annual throughput to 4,500,000 gallons.

{4}    The Division published notice of the requested permit modification in the Albuquerque Journal and also notified local neighborhood associations. In response,

the Division received numerous requests to hold a public information hearing. The nearby residents who attended the hearing raised concerns about the Station. After the hearing, the Division determined that, notwithstanding the public's concerns, the requested permit modification complied with the provisions under the New Mexico Air Quality Control Act, the federal Clean Air Act, and all other relevant regulations. The Division, therefore, issued the requested permit modification to increase the Station's throughput to 4,500,000 gallons.

{5}     After receiving notice that the Division issued the permit, Petitioners initiated an appeal before the Board to challenge the permit modification. The Board approved their requests to hold a public hearing and appointed a hearing officer. The hearing was held over three days and included opportunities for Petitioners to provide comment and testimony. After the hearing, the hearing officer submitted recommended findings of fact and conclusions of law to the Board. The hearing officer recommended affirming the Division's issuance of the permit modification because the requested modification was in compliance with all requirements of New Mexico and federal law, it would not cause or contribute to air contaminant levels in excess of state, local, or federal standards, and the modification would not violate any other provision of New Mexico or federal air quality laws. NMSA 1978, § 74-2-7(C)(1)(a)-(c) (2003) (providing that a permit may be denied if it "(a) will not meet

applicable standards, rules or requirements of the Air Quality Control Act or the federal act; (b) will cause or contribute to air contaminant levels in excess of a national or state standard or, within the boundaries of a local authority, applicable local ambient air quality standards; or (c) will violate any other provision of the Air Quality Control Act or the federal act[.]" ).

{6}    The Board considered the hearing officer's recommendation at its next scheduled meeting. Contrary to the hearing officer's recommendation, the Board decided to reverse the issuance of the permit modification. The Board stated that it is "required to protect public health and welfare. Increases in throughput increase risks to public health. The quality-of-life concerns raised by the community could be indirectly related to air quality." Despite its decision, the Board voted to adopt all of the hearing officer's recommended findings of fact and most of her recommended conclusions of law, although with some modifications to the conclusions of law in order to align them with the Board's decision to reverse the issuance of the permit. These modifications included the Board's conclusion that the Petitioners met their burden of proving that the permit would "contribute indirectly to increased air pollution, in violation of the Air Act's mandate to the Board to prevent or abate air pollution [pursuant to NMSA 1978, § 74-2-5(A) (2007).]" The Board determined that its mandate to prevent or abate air pollution allows it to "consider quality of life

5

concerns that are directly or indirectly related to air quality." Respondents now appeal the Board's decision.

**DISCUSSION**

**Standard of Review**

{7}    We will only set aside the Board's decision if it is found to be "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence . . .; or (3) otherwise not in accordance with law." NMSA 1978, § 74-2-9(C) (1992).

**The Board Found No Facts Supporting Its Decision**

{8}    Both the City and Smith's argue that the Board's decision was arbitrary and capricious because none of the hearing officer's recommended findings of fact, which the Board adopted in their entirety, support its decision to reverse the Division's grant of the permit modification. We agree. The parties also devote significant arguments to whether the Board had the authority to base its decision on its general statutory mandate to prevent and abate air pollution. Even if we assume—without deciding—that the Board had such authority, we nonetheless reverse the Board's decision because the Board made no findings that would support its decision.

{9}    The Board's findings do not dispute that the permit modification complied with all applicable federal regulations and technical specifications. The crux of the Board's conclusions, however, was that "[i]ncreases in throughput increase risks to publish

6

(sic) health" and the Board is mandated to "protect public health and welfare." The Board decided that the "quality of life concerns raised by the community could be indirectly related to air quality" and that its statutory mandate to "prevent or abate air pollution permits the Board to consider quality of life concerns that are directly or indirectly related to air quality." The Board's reasons are summed up in conclusion of law No. 52, which states, "[P]etitioners demonstrated by a preponderance of the evidence that the increase in throughput allowed by the modification would contribute indirectly to increased air pollution, in violation of the Air Act's mandate to the Board to prevent or abate air pollution."

**{10}** "[A]n agency's action is arbitrary and capricious if it provides no rational connection between the facts found and the choices made." *Atlixco Coalition v. Maggiore*, 1998-NMCA-134, ¶ 24, 125 N.M. 786, 965 P.2d 370. Our review of the findings of fact reveals no instance where the Board identified the "quality of life" concerns it was taking into account. The closest the findings come to discussing the Petitioners' concerns is the section entitled "Smith's Efforts to Address Neighborhood Concerns." This section discusses the actions Smith's took to address the residents' concerns such as creating a visual barrier between the gas station and the neighborhood, lowering the volume of the gas station attendant's intercom, encouraging idling vehicles to turn off their engines, posting signs to make drivers

aware of potential traffic hazards, installation of a public restroom, changes to fuel delivery times to increase traffic safety, and providing money for the construction of a gate on a nearby property. This section also addresses Smith's relocation of its underground storage tank's vent following complaints by a neighbor. The findings state that Smith's passed air quality tests performed by the New Mexico Occupational Health and Safety Bureau and the Division after the vent was relocated. Despite indicating what some of the nearby residents' concerns were, these findings provide no definitive statement or inference that the public concerns and remedial actions that were addressed by Smith's also constitute findings identifying the "quality of life" concerns that formed the basis for the Board's decision.

{11}    Furthermore, some findings of fact actually contradict the Board's decision. For instance, the findings state that the purpose of the throughput requirements is to "allow[ the Division] to determine the annual emission fee" and "keep inventories of [volatile organic compounds] emissions from [gas stations]." The Board found that "[n]o evidence was presented that the annual throughput limit is intended to reduce or control air emissions. Rather, [the Division's] primary means of reducing or controlling air emissions is its requirement, based on local and federal regulations, that [gas stations] use Stage I vapor recovery systems." The findings noted that Smith's uses a Stage I vapor recovery system and that the Division determined that the station

"employed vapor control technology sufficient to meet the standards of the New Mexico Air Quality Control Act and the federal Clean Air Act."

{12}    In sum, without findings of fact regarding the quality of life concerns that the Board relied on, this Court cannot properly review whether the Board's reliance on those facts was sufficiently connected to its mandate to prevent and abate air pollution and the regulations passed pursuant thereto.[1]  *See Colonias Dev. Council v. Rhino Envtl. Serv., Inc.*, 2005-NMSC-024, ¶ 29, 138 N.M. 133, 117 P.3d 939 (stating that while the environmental department must allow testimony regarding quality of life concerns when review of a permit application under the Solid Waste Act, its authority to address those concerns "requires a nexus to a regulation").  We are aware of the general concerns Petitioners raised about the Station at the multiple public hearings. Some of the concerns are unrelated to air quality, while others, as the Board noted in its statement of reasons, "could be indirectly related to air quality."  But we will not search the record to supply evidence to support the Board's decision where the Board

---

[1]We emphasize that because the Board did not make findings in support of its decision, we are not reviewing whether the Board's general mandate to prevent and abate air pollution provides a sufficient basis to deny permit applications.  Similarly, we are also not reviewing whether the Board's mandate to prevent or abate air pollution allows it to consider quality of life concerns that are "indirectly" related to air quality. The rule, as stated in *Rhino*, is that there must be a nexus between the quality of life concerns and an applicable regulation, regardless of whether the Board considered those concerns to be directly or indirectly related to air quality.  2005-NMSC-024, ¶ 29.

9

made no such express findings. *See Atlixco*, 1998-NMCA-134, ¶ 21 (stating that an agency's decision "cannot be sustained on a ground appearing in the record to which the [agency] made no reference; to the contrary, the [agency]'s decision stands or falls on its express findings and reasoning" (internal quotation marks and citation omitted)).

{13} Additionally, we cannot discern how the Board's adoption of findings that air pollution is not controlled by throughput limits can be squared with its conclusion that an increase in throughput would increase air pollution and present a risk to public health and welfare that necessitated the denial of the permit. *Atlicxo*,1998-NMCA-134, ¶ 24. The findings indicate that emissions are controlled by Stage I vapor recovery systems, not limitations on throughput. That is not to say that it cannot be inferred that an increase in the throughput limitation would also increase the amount of fuel dispensed. Any additional connection between the amount of fuel dispensed and any "quality of life" concerns that are related to air quality/pollution was the responsibility of the Board when it issued its findings. But with findings indicating that throughput limitations are not a means of controlling emissions, it is contradictory for the Board to make those findings and also to conclude that denying the permit would prevent or abate air pollution. Accordingly, we conclude that the Board's

decision was arbitrary and capricious because it lacked support from the findings that were made.

**CONCLUSION**

{14}     For the foregoing reasons, we reverse the Board's decision and remand for proceedings consistent with this Opinion.

{15}     **IT IS SO ORDERED.**


_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**